UNPUBLISHED

**UNITED STATES COURT OF APPEALS**

**FOR THE FOURTH CIRCUIT**

UNITED STATES OF AMERICA,
Plaintiff-Appellee,

v.                                                                No. 96-4528

CATALINO ZELAYA,
Defendant-Appellant.

Appeal from the United States District Court
for the Eastern District of Virginia, at Alexandria.
Claude M. Hilton, Chief District Judge.
(CR-95-493)

Submitted: April 30, 1998

Decided: June 19, 1998

Before WILKINS, NIEMEYER, and LUTTIG,
Circuit Judges.

_____

Affirmed by unpublished per curiam opinion.

_____

**COUNSEL**

Cary S. Greenberg, Michael D. Breen, GREENBERG, BRACKEN &
TRAN, P.C., Alexandria, for Appellant. Helen S. Fahey, United
States Attorney, W. Neil Hammerstrom, Jr., Assistant United States
Attorney, Alexandria, Virginia, for Appellee.

_____

Unpublished opinions are not binding precedent in this circuit. See Local Rule 36(c).

_____

**OPINION**

PER CURIAM:

Catalino Zelaya appeals his conviction and sentence for conspiracy to distribute cocaine and cocaine base in violation of 21 U.S.C. § 846 (1994). He contends that it was plain error for him to be clothed in prison attire during the one-day trial. Zelaya also contends the court erred in refusing to give him a two-level reduction in the offense level for his role in the offense, in considering a prior drug conviction when determining his criminal history category and sentencing him based on crack cocaine, in light of the 100-to-1 sentencing ratio between crack cocaine and powder cocaine. Finding no error, we affirm.

At the outset of trial, Zelaya's defense counsel informed the court that he told Zelaya he should wear regular clothes rather than prison clothes during the trial. At one point, counsel stated he did not think that Zelaya understood or appreciated what was occurring. At another point, counsel stated that Zelaya "factually" understood what was occurring. At the Government's suggestion, the court gave counsel time to discuss with Zelaya whether he wanted to proceed to trial in his prison clothing. After the discussion, counsel reported to the court that "it is my understanding that Zelaya has no objection to proceeding in his current clothing. He understands he does have a right to get other clothes, but my understanding is he is willing to proceed wearing these." The court asked Zelaya whether this was correct, to which Zelaya said yes.

Although there may be instances when a defendant prefers to wear prison attire during a jury trial, compelling a criminal defendant to wear prison attire may interfere with the defendant's right to a fair trial. See Estelle v. Williams, 425 U.S. 501, 503-05, 508 (1976). The defendant's failure to object to wearing prison attire "is sufficient to negate the presence of compulsion necessary to establish a constitutional violation." Id. at 512-13. Zelaya contends that he objected to

2

wearing his prison attire. However, the record clearly reveals that Zelaya did not object to proceeding to trial in his prison attire. In fact, the record reveals that he considered his options and chose to remain in prison attire.

Zelaya contends that the court should have conducted its own inquiry as to whether Zelaya knowingly and voluntarily waived his right to wear regular clothes. The Supreme Court in Estelle specifically stated that it would not impose such an obligation on trial courts, leaving such decisions to the defendant and his attorney. See Estelle, 425 U.S. at 512. Moreover, any representation by counsel indicating that Zelaya did not understand the nature of the proceedings was subsequently nullified by counsel's final remark on the matter stating that Zelaya understood his rights. Accordingly, we find the court did not err in permitting Zelaya to remain in his prison attire.

Zelaya argues that his base offense level should have been decreased because he was a minor participant in the conspiracy.* He contends that his brother was responsible for distributing much of the crack cocaine. The court's decision not to award Zelaya such a reduction is reviewed for clear error. See United States v. Love, 134 F.3d 595, 606 (4th Cir. 1998). Zelaya was assigned a base offense level of 32 based solely upon the 111.8 grams of crack cocaine he sold to an informant. He was not held responsible for the other amounts of crack cocaine distributed by his brother. Since he was only held responsible for crack cocaine he directly distributed, he is not entitled to a reduction for his role in the offense. Furthermore, the evidence showed that Zelaya foresaw the expanse of the conspiracy when he told the informant that he could "make good money" dealing with his brother and then set about introducing the two to each other. We find that the court did not err in this instance.

Zelaya also contends that the court erroneously assessed him two criminal history points for a state conviction for possession with intent to distribute cocaine rather than considering the conviction as relevant conduct. A sentence which is for conduct that is part of the

_____

*U.S. Sentencing Guidelines Manual § 3B1.2 (1995) permits a two to four level reduction in the base offense level if the defendant was a minor or minimal participant in the offense.

3

instant offense should not be counted as a prior sentence in determining criminal history. Conduct is part of the instant offense if it is relevant conduct under USSG § 1B1.3 (1995). See USSG § 4A1.2(a)(1), comment. (n.1) (1995). Conduct that is part of the same course of conduct or part of a common scheme or plan should be considered relevant conduct. See USSG § 1B1.3(a)(2). Whether or not a prior conviction should be considered as part of the defendant's criminal history or relevant conduct is a fact-specific determination to be made by the district court. See United States v. McManus, 23 F.3d 878, 888 (4th Cir. 1994). In determining whether convictions are part of a common scheme or plan, a court should consider whether the crimes were committed within a short period of time, in close geographic proximity, directed at a common victim, solved during the same investigation, had similar modus operandi, compelled by similar motives, and involved the same substantive offense. See United States v. Breckenridge, 93 F.3d 132, 138 (4th Cir. 1996).

We do not find that the court clearly erred in determining that Zelaya's state sentence should be used to determine his criminal history category. The conspiracy and the state possession incident did not occur within a short period of time. According to the federal indictment, the conspiracy concluded in March 1994. The state possession incident occurred a year later in April 1995 when Zelaya was arrested after a routine traffic stop. See, e.g. , United States v. Mullins, 971 F.2d 1138, 1145 (4th Cir. 1992) (uncharged conduct occurring six months prior to charged conduct did not occur within temporal proximity). Nor did the state incident involve any other members of the conspiracy. Furthermore, Zelaya was not charged with the same substantive offense. Although Zelaya would describe his role in the conspiracy and the state offense as only a delivery person, this alone does not compel a finding that both convictions were part of a common scheme or plan. It is not sufficient that the state conviction was similar to the charged offense if they are not part of the same course of conduct or plan. See Mullins, 971 F.2d at 1145.

Finally, Zelaya contends that the 100-to-1 sentencing ratio between crack cocaine offenses and powder offenses cannot be justified. This Court has firmly rejected this claim. See United States v. Banks, 130 F.3d 621, 625-26 (4th Cir. 1997), cert. denied , ___ U.S. ___, 1998 WL 111615 (U.S., Apr. 6, 1998) (No. 97-8221).

4

For the foregoing reasons, Zelaya's conviction and sentence are affirmed. We dispense with oral argument because the facts and legal contentions are adequately presented in the materials before the court and argument would not aid the decisional process.

<u>AFFIRMED</u>

5